UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    v.<br><br>JAMES SNOW<br><br>            Defendant. | Criminal 24-cr-10121-ADB |

**DEFENDANT'S REQUEST FOR PRETRIAL RELEASE**

Defendant, James Snow, by and through his undersigned counsel, respectfully requests that the Court grant his request to be released from detention pending trial subject to the completion of an in-patient treatment program, and other conditions the Court imposes, which would reasonably assure his appearance throughout these proceedings and the safety of the community.

Under 18 U.S.C. § 3142(c)(1)(B), the Court may order a defendant's release subject to the least restrictive condition, or combination of conditions, that the Court determines will reasonably assure the defendant's appearance as required and the safety of any other person and the community. Although 18 U.S.C. § 3142(e)(3) establishes a *rebuttable* presumption of pretrial detention based on the crimes with which Mr. Snow is charged, Mr. Snow's personal circumstances, his lack of criminal history, and the circumstances of this matter, demonstrate that release is appropriate under, and consistent with, the objectives of, § 3142. Indeed, Probation is recommending that Mr. Snow be released to an in-patient facility for substance abuse treatment, after which restrictive conditions could be imposed on his release that would reasonably assure his appearance throughout these proceedings and the safety of the community. Such conditions could include, but are not limited to, requiring Mr. Snow to: (i) wear an ankle monitor; (ii)

comply with a specified curfew; and (iii) actively seek employment while released. Mr. Snow's uncle, William Snow, has agreed to allow Mr. Snow to reside with him in Everett, MA after completion of an in-patient program. William Snow has served as a father figure to Mr. Snow since the loss of his parents and is willing to assist Mr. Snow in finding employment.

      Mr. Snow's lack of a serious criminal history and personal circumstances also show that he is not a flight risk and would not pose a danger to the community. While Mr. Snow does have prior arrests, he has never been sentenced to a term of imprisonment, charged with a violent crime, or charged with a federal crime. Moreover, the indicia that would typically suggest a defendant poses a flight risk are completely absent in Mr. Snow's case: (i) Mr. Snow was homeless for the two years prior to his arrest, living locally in hotels and staying with friends; (ii) he does not possess a passport and has never left the U.S.; (iii) he does not own a car; and (iv) he has no assets other than basic necessities.

      Mr. Snow has also struggled with mental health and substance use issues, compounded by the immense personal loss in his life, which he is committed to addressing through an in-patient treatment program should he be released, consistent with Probation's recommendation. Mr. Snow tragically lost his brother to a drug overdose at a young age. He then lost his parents in quick succession, with his dad passing away in 2014 and his mother in 2016. These tragedies have only worsened Mr. Snow's depression, for which he takes Lexapro, a prescription anti-depressant, and contributed to his prior struggles with substance use. Despite the great adversity Mr. Snow has faced in life, until recently, he maintained steady employment for approximately fifteen years as an operations manager for Pioneer Freight Systems, a trucking company based out of Logan International Airport. He was laid off from that job in 2022 only as his mental health and substance use issues became more pronounced. Since then, Mr. Snow has been trying

-3-

to get back on his feet and recognizes the opportunity that his release could provide him to reenter the workforce, address his mental health and substance use issues, and reconnect with his family, including his eight-year-old son and his son's mother, Lauren Botchie. Ms. Botchie has also submitted a letter of support for Mr. Snow's release, which is attached as Exhibit A. Conversely, if Mr. Snow were to continue to be detained at this time, he will not have the opportunity to receive the substance abuse and mental health treatment he so desperately needs—indeed, he has not been regularly receiving Lexapro, or an alternative, since being arrested and detained.

    Mr. Snow's commitment to addressing his underlying mental health and substance use issues, lack of a serious criminal history or means to flee, and willingness to participate in an in-patient treatment program and adhere to several conditions of release following completion of the program show that he would not pose a flight risk or a danger to the community. For these and additional reasons that will be further discussed at the hearing on this matter, Mr. Snow requests that the Court grant him pretrial release subject to the conditions that the Court determines necessary.

| | |
|---|---|
| Dated: October 9, 2024 | Respectfully submitted, |
| | */s/* Sarah E. Walters |
| | Sarah E. Walters # 638378 |
| | Ropes & Gray LLP |
| | 800 Boylston Street |
| | Boston, MA 02199-3600 |
| | Tel: (617) 951-7000 |
| | Fax: (617) 951-7050 |
| | |
| | *Counsel for Defendant James Snow* |

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 9, 2024, I filed the foregoing Request for Pretrial Release with the United States District Court for the District of Massachusetts using the CM/ECF system and caused it to be served on all registered participants via the notice of electronic filing.

                                                        /s/ Sarah E. Walters
                                                        Ropes & Gray LLP

# EXHIBIT A

Lauren Botchie
106 10th Street
Tewksbury, MA 01876

Honorable Judge M. Page Kelley,

I am writing to provide a character reference for the defendant before you, James Snow, better known as Jimmy to those who hold him dear.

The Jimmy that I have come to know is markedly different from the individual currently before you, and while I acknowledge the charges that he faces and the severity of the case, it is my sincere hope that the court takes this letter into consideration and provide leniency in his case. In consideration of bail, I believe that a more merciful approach would be just.

Over nearly a decade, our relationship encompassed cohabitation and the shared responsibility of raising a child until the end of 2022. Shortly after having our son, we were engaged to marry. Since meeting Jimmy in 2015, I have developed a profound understanding of his character, knowing him more intimately than anyone else. I have a deep and detailed insight into his behaviors, experiences, and motivators, and am well-acquainted with many aspects of his life and personality, which has allowed me to form a complete and nuanced picture of who he is.

Historically, he has been a what his family and peers alike have described as a "good kid". His amiable nature has garnered him a wide circle of friends, and he has always been a pillar of support within his community. Jimmy has consistently demonstrated thoughtfulness and a caring disposition, readily extending assistance to friends and family in various capacities. His support has ranged from providing financial aid, meals, a place to sleep, as well as his mechanical and general labor skills, to friends in need. He has always been a "go-to guy", and he has never left anyone hanging.

Additionally, Jimmy is widely recognized as a diligent and indispensable employee within the air freight industry, where he sustained a successful career and demonstrated exceptional performance, up until the end of 2022. Throughout our relationship, Jimmy remained a steadfast provider- his commitment and hard work was instrumental in ensuring the well-being and stability of our family.

Furthermore, Jimmy emerged from a family of good standing, and was a devoted son, maintaining good relationships with his parents, as well as emotionally and financially supporting his mother after his father's passing.

Regrettably, negative influences and associations have diverted Jimmy from his true path. Jimmy has faced significant personal losses, including the untimely death of his only sibling at a young age, followed by the passing of both parents in 2014 and 2016, shortly after the birth of his son. These profound tragedies have deeply affected him, and he has struggled to process his grief adequately. Psychologically, unprocessed grief can lead to feelings of being adrift and precipitate impulsive and detrimental decisions. Unfortunately, this was the case for Jimmy. Due to his inability to cope, his grief manifested in anger and other negative emotions and behaviors,

such as a short temper, defiance, substance abuse, and self-destructive behavior. Surrounding himself with negative influences only fueled these behaviors and poor decisions, which ultimately led him down a path that resulted in his current situation.

Naturally, this had an impact on our relationship that resulted in us splitting up in September of 2022. However, regardless of the pain he caused me, I always saw the good in him and believed in his potential for change. I've always understood that his actions were often a reflection of his internal struggles rather than his true character. I know Jimmy better than anyone and can attest to his significant potential. Despite losing his immediate family, he still has a robust support system, including myself, his uncle Bill Snow, his wife Kara Snow, and their family.
That said, I firmly believe that the Jimmy I once knew- the one who built a life with me and cared deeply for our family- remains within him. At his core, he is a good person who deserves to prove to the justice system, to society, and himself.

These traits highlight his potential for successful integration and rehabilitation, as well as his ability to contribute positively to society, ensuring he will be a valuable member of the community. A man who possesses such potential deserves the chance to prove himself. I am confident that, given the opportunity, Jimmy can use this experience as a catalyst for positive change. Throughout our relationship, I have always emphasized that there is room for improvement, and I believe that Jimmy is capable of making significant strides forward.

To reiterate my initial point, I respectfully request that you consider leniency in setting bail for Jimmy. Imposing no bail or a high bail amount would ultimately set him up for failure and deprive him of an opportunity to turn his life around.

Contrarily, bail set at a reasonable amount would provide him with the opportunity to begin his journey toward rehabilitation and maintaining stability. Furthermore, an affordable bail would ensure that the financial burden does not unduly punish him. This consideration is crucial for maintaining his family's stability and support system which is integral to Jimmy's ongoing positive development.  This approach aligns with the principles of restorative justice, offering Jimmy the chance to prove his commitment to personal growth and positive contributions to society.

I earnestly hope that you take this letter into account. Despite the charges and circumstances of the case, I firmly believe that Jimmy is an individual deserving of the opportunity to demonstrate his capability to be a valuable member of society, be the father he is meant to be, and return to the true Jimmy that his family and friends all know and care for.

I truly appreciate your time and consideration.

Sincerely,
Lauren Botchie