UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )  | |
| ) | Criminal No.: 24-cr-10121-ADB |
| v.            ) | |
| ) | |
| JAMES SNOW, a/k/a "TANK,"  ) | |
| ) | |
| Defendant.      ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
REQUEST FOR RELEASE FROM DETENTION**

The United States of America, by and through its counsel of record, the United States Attorney for the District of Massachusetts and Assistant United States Attorney John T. Dawley, Jr. hereby opposes the Defendant's, James Snow, (hereinafter the "Defendant" or "Snow") request for release from detention (DE 62, 68).

On October 10, 2024, the government submitted a detention exhibit list for this matter, which was followed by a detention hearing, conducted by proffer, on October 15, 2024. *See* ECF Dkt 52, 62.  Following the hearing, the Court took the matter under advisement and informed counsel that they may file supplemental documentation.  *Id.*  It remains the government's position that the defendant presents an overwhelming danger to the community and risk of flight that requires his continued detention, based on his conduct in this case (including drug trafficking and gun trafficking while already on probation in state court) and his significant criminal history (including numerous convictions, default warrants, violations of probation, and a concerning history of firearms and outlaw motorcycle club gang association).

**PROCEDURAL HISTORY**

The Defendant was discovered in New Hampshire and arrested by members of the ATF, alongside other state and federal agencies, in a joint effort to address large-scale sales of

methamphetamine by a drug trafficking organization ("DTO") involving SNOW and others associated with outlaw motorcycle organizations, who had been selling methamphetamine in the eastern Massachusetts area, since at least October, 2023.

During the course of this investigation, law enforcement officers conducted over twenty controlled purchases of "ice" methamphetamine and various firearms, during buys that occurred with regularity in cities and towns north of Boston, up to the New Hampshire border.

As part of the investigation, in September, 2024, four individuals, including the defendant, were indicted and charged for a number of federal drug trafficking and gun trafficking violations. See *United States v. Daniel Loughman*, et. al., 24-cr-10121ADB.  Additionally, law enforcement officers seized nearly 10 pounds of methamphetamine, along with four firearms and ammunition (all from the defendant), during the investigation of the above-mentioned individuals.

The Defendant had an initial appearance on September 30, 2024 before Magistrate Judge M. Page Kelley.  The government sought detention of the Defendant on the following grounds:

- 18 U.S.C. § 3142(f)(2)(A), because there is a serious risk the Defendant will not return to Court if released; and

- 18 U.S.C. § 3142(f)(1), because the Defendant poses a danger to the community if released.

During the detention hearing on October 15, 2024, the government demonstrated by a preponderance of the evidence that the defendant poses a risk of flight and, by clear and convincing evidence, that he is a danger to the community.  Further, that in this case, the defendant cannot overcome the rebuttable presumption that there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community, given the charges and conduct at issue here. 18 U.S.C. § 3142(e)(2).

## FACTUAL BACKGROUND

I.     THE DRUG CONSPIRACY

As stated above, in this drug investigation controlled purchases and arrests were made during a joint ATF and Massachusetts State Police ("MSP") investigation into the trafficking of large amounts of methamphetamine in the eastern Massachusetts area by the defendant and other individuals, including Daniel Loughman a/k/a "Swiss" ("Loughman"), Danielle Steenbruggen a/k/a "Daniella" ("Steenbruggen"), and James Adams a/k/a "Jimmy" ("Adams").

Under the ATF's direction, an undercover police officer ("UC-1") made repeated controlled buys of narcotics, and subsequently firearms, from the defendant, as outlined below in the below chart and photographs of seized methamphetamine and other controlled purchase items.

**GOVERNMENT EXHIBIT 01**

**Chart of Approximate Drug Weights and other Controlled Purchase Items**

| Date of Seizure | Seller | Substance / Item | Net Weight (approx.) | Involved, Location |
|---|---|---|---|---|
| 10/5/23 | SNOW | Methamphetamine | 83.4 grams | Saugus, MA |
| 11/1/23 | STEENBRUGGEN | Methamphetamine | 6.974 grams | ADAMS, Byfield, MA |
| 11/3/23 | [redacted] | Methamphetamine | 56 grams | SNOW, Byfield, MA |
| 11/8/23 | [redacted] | Methamphetamine | 21.192 grams | ADAMS, Haverhill, MA |
| 11/15/23 | [redacted] | Methamphetamine | 79.1 grams | SNOW, Saugus, MA |
| 11/29/23 | SNOW | Methamphetamine | 13.991 grams | Woburn, MA |
| 12/7/23 | ADAMS | Methamphetamine | 82.4 grams | STEENBRUGGEN, Byfield, MA |
| 12/7/23 | SNOW | Methamphetamine | 106.7 grams | Woburn, MA |

| Date | Name | Item | Quantity | Location |
|---|---|---|---|---|
| 12/19/23 | ADAMS | Methamphetamine | 107 grams | Byfield, MA |
| 12/28/23 | SNOW | Methamphetamine | 111.3 grams | LOUGHMAN, Wakefield, MA |
| 1/10/24 | ADAMS | Methamphetamine | 448.6 grams | Byfield, MA |
| 1/11/24 | SNOW | Methamphetamine | 111.2 grams | Woburn, MA |
| 1/24/24 | SNOW | .380 pistol, 31 rds | ------ | Tewksbury, MA |
| 1/29/24 | ▮ | Methamphetamine | 107.6 grams | SNOW, M▮, Tewksbury, MA |
| 2/8/24 | ADAMS | Methamphetamine | 21 grams | (Arrest) Newburyport, MA |
| 2/14/24 | SNOW | S&W 9mm pistol, Methamphetamine | 100.5 grams | Woburn, MA |
| 2/19/24 | LOUGHMAN | Methamphetamine | 332.3 grams | L▮, ADAMS STEENBRUGGEN, Byfield, MA |
| 2/21/24 | SNOW | 2 firearms, 39 rds | ------ | Burlington, MA |
| 3/6/24 | LOUGHMAN | Methamphetamine | 892 grams | (Arrest) Wakefield, MA |
| 3/27/24 | SNOW | Methamphetamine | 113.3 grams | Burlington, MA |

Government Detention Exhibit 1 - Chart of drug weights, other items



Government Detention Exhibit 12 - Photograph of guns purchased from Snow during controlled buy on 2.21.24

During the controlled purchases, the defendant was involved in 12 of the sales, and dealt with the undercover officer directly on at least 8 occasions, including each time he sold firearms to the officer, and where he was repeatedly captured conducting the sales on covert recording devices. Notably, investigators expect that all of the methamphetamine is "Ice," meaning a mixture or substance containing d-methamphetamine-hydrochloride of at least 80% purity, and during each controlled purchase that the defendant was involved in, except for the November 29th controlled purchase, the respective drug sale included more than 50 grams of ice methamphetamine.

Additionally, during communications with the undercover officer, the defendant made numerous statements about his involvement in illegal trafficking, such as "My shit is top quality clearly if people giving my name out like that…And I go by Tank I don't like using my legal name" as well as "And I didn't say anything because I don't rat…or say [names]" and "I straight up done bro. I got a wife and kid not about to 10+ [years]…This was my last chance with my family, not risking it" during texts in Government Detention Exhibit 14, surrounding the October 5th controlled purchase, the first of a dozen drug and gun deals involving the defendant.

II.     **ARREST OF SNOW**

Additionally during this investigation, the defendant attempted to conceal himself and evade law enforcement in numerous ways, including changing his phone number on at least 3 occasions. Up until the first occasion, in December 2023, the defendant had been using the -4723 phone number. However, in December, 2023 the defendant sent a text message to the undercover officer stating "Yo, it's Tank's new number," during texts in Government Detention Exhibit 8, surrounding the December 7th controlled purchase of over 100 grams of methamphetamine, after which additional controlled purchases were completed. Investigators

utilized toll records during this time period, as well as the data from cell site location information and an active pen register, to determine that the defendant was utilizing a telephone app that was "spoofing" his phone number and causing the display to show a phone number (the -1633 phone number) different from that of the telephone from which the call or text was actually placed.

Even after the final controlled purchase in March, 2024, the defendant continued to change his phone number and continue to engage in drug & gun trafficking discussions with the undercover officer.



GOVERNMENT EXHIBIT 14



Government Detention Exhibit 14 – Snow's phone number changes in June and July, 2024

Leading up to the day that the defendant was arrested, September 27, 2024, investigators had to utilize further cell phone records, as well as the data from cell site location information, to ascertain that the defendant was living in New Hampshire at an address not registered to him. As recent as the night before the defendant was arrested, investigators learned that Snow was traveling back and forth between Massachusetts and New Hampshire, including in the middle of the night, and that when he was residing overnight in New Hampshire, it appeared he was turning his cell phone off for significant periods of time.

## ARGUMENT

Under the Bail Reform Act of 1984, detention of a defendant is required if "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). The government is required to demonstrate, by a preponderance of the evidence, that a defendant poses a risk of flight or, by clear and convincing evidence, that he is a danger to the community. *United States v. Patriarca,* 948 F.2d 789, 792–793 (1st Cir.1991). In considering the government's motion to detain the Defendant, the Court must determine whether any condition or combination of conditions will reasonably assure "the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).[1] The government has sufficiently shown the risk of flight and danger to the community that the Defendant poses; there are no conditions of the Defendant's release that would ensure the safety of the public. Additionally, here "a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person and the community" given the charges in this indictment. 18 U.S.C. § 3142(e)(2).

### I.   THE DEFENDANT POSES AN INTOLERABLE RISK OF DANGER AND OF FLIGHT

The evidence outlined in this memorandum, and submitted at the detention hearing, provides sufficient basis to support detention of the Defendant on both grounds.

#### A.   Danger to the Community

The Defendant's criminal history and repeated examples of disregard for the law exemplify his danger to the community. His criminal history includes three separate felony arrests in the past

---

[1] As noted by the Senate Judiciary Committee: "This reference to safety of any other person is intended to cover the situation in which the *safety of a particular identifiable individual, perhaps a victim or witness*, is of concern, while the language referring to the safety of the community refers to the danger that *the defendant might engage in criminal activity to the detriment of the community*." S. Rep. No. 98-147, at 39 (1983) (emphasis added; footnotes omitted); *see also United States v. Patriarca,* 948 F.2d 789, 792–793 (1st Cir.1991).

5 years, including a conviction and active state probation while he was conducting numerous sales of methamphetamine and firearms in this investigation. He was charged in the Malden District Court for a July 2023 incident of receiving stolen property of a $7,200 landscaping trailer while at his co-defendant Loughman's home in Wakefield. Snow was subsequently convicted and is now on probation until May 2025.

Shortly before that incident, he was arrested twice in quick succession for firearm-related offenses, and the Defendant's criminal history has been ongoing and continuous for a large portion of his adult life. As outlined in several incidents amongst the Defendant's criminal history;

<u>Receiving Stolen Property (2350cr1531, Malden District Court)</u>

At the time of the defendant's conduct and subsequent arrest in this case, he was either on pre-trial conditions of release or state probation in the Malden District Court, docket 2350cr1531, where he was charged with larceny, receiving stolen property and vandalizing property for an incident on July 26, 2023.  That case where the defendant was involved in a theft of a $7,200 landscaping trailer while staying at his co-defendant Loughman's home in Wakefield, ended in the defendant pleading guilty and he was placed on probation until May 7, 2025.

During this conduct, the defendant was caught on surveillance video, utilizing the same vehicle involved in numerous controlled buys in this investigation, stealing an expensive landscaping trailer.  Despite being caught on video, the defendant lied repeatedly to police officers about his involvement, and he even later spoke openly about the incident with the undercover officer that he was selling drugs to.

<u>Improper Storage of a Firearm, Carrying a Firearm without a License
(1950cr0836, Malden District Court)</u>

On April 20, 2019, detectives with the Massachusetts State Police executed a search warrant on a clubhouse for the Pagan Motorcycle Club, during which they recovered 4 firearms,

9

including 2 in close proximity to the defendant. Snow told investigators that he was in charge when asked, and was working in what appeared to be an unlicensed cash bar inside the clubhouse. 2 of the loaded firearms were recovered in a trash barrel next to where the defendant was standing, and an additional loaded magazine was found in a backpack near the defendant and behind the bar as well. Ultimately, amongst the 20 individuals located inside the clubhouse, many of which investigators believed to be associated with outlaw motorcycle organizations, the defendant and two others, including an individual "JW," were arrested.

Ultimately, this matter was dismissed against the defendant, however his bail was revoked for a period of 60 days after he was arraigned, due to this arrest occurring while he had a separate offense, also involving firearms, already pending.

<u>Improper Storage of a Large Capacity Firearm (1811cr3375, Lowell District Court)</u>

As referenced above, the defendant was convicted in Lowell District Court for charges related to the improper storage of a large capacity firearm in Tewksbury on June 14, 2018. The Tewksbury Police revoked the defendant's license to carry a firearm as a result of a Facebook post that the defendant had made the day prior, which read in-part;

> "…No idea where my life will be next week tomorrow or even 5 years. Complete shit show if you ask me. I think I need to step back from everything and everyone for a while and really slap myself in the face and wake the fuck up bcuz **I'm seriously going to kill someone that has no right to die.**"

When the police department arrived at the defendant's residence, which he shared with his fiancé and their infant child, Snow admitted that he had created the Facebook post, and provided several firearms to the police, including one gun inside a GMC truck, which was owned and registered to the individual "JW" referenced above. Investigators recovered a loaded firearm in that truck, which was inside the defendant's leather vest affiliated with the Devil's Disciples motorcycle club. Equally concerning to law enforcement was that the 2nd recovered firearm did

not match any firearm registered to the defendant, and the defendant's fiancé later had to call police back to the residence and turn over more firearms from a safe in the house, to which the defendant stated he was holding onto for a friend.

The defendant pled guilty in 2019 and was originally sentenced to a year of probation, including conditions that he not possess any weapons and not associate with any biker gangs or organizations. However, a couple months later, the defendant was issued a violation notice, and ultimately found in violation of that probation.

As referenced above, when given the opportunity of probation, the Defendant violates that probation repeatedly. While having pending cases, the Defendant is involved in further firearm-related offenses, including while being amongst other motorcycle gang associates. Even after being given the opportunity of release on conditions and subsequent further probation for felony theft, the Defendant continues to commit new offenses, specifically tied to this drug distribution and gun trafficking investigation. He even makes mention of his pending case and also his awareness of the punishment he faces for the drug and gun sales he was actively engaged in. This extensive criminal history is highlighted by his repeated issues with firearms, drug dealing, and his gang association. More recently, the serious charges and mandatory minimum sentences associated with this federal indictment is additionally suggestive of the extremely dangerous conduct that this Defendant is capable of, and warrants his detention pending trial.

In this case, the Defendant repeatedly sold large amounts of ice methamphetamine to an undercover police officer, in a conspiracy that led to the recovery of nearly 10 pounds of crystal methamphetamine. This is a significant amount of drugs recovered, and in conjunction with his criminal history and his sales of the numerous firearms, are all indicative of the Defendant's ongoing danger to the community.

**B.     Risk of Flight**

The government knows that the Defendant will argue that his family ties to the community nullify any belief that he is a flight risk.  However, his past criminal history and record concerning appearance at court proceedings weigh heavily against him.  The Defendant has a significant criminal history and also repeated attempts to evade law enforcement and prior violations of probation, parole, or supervised release.  Moreover, while on pre-trial release and probation for a felony theft, after additional recent arrests for firearm offenses, the defendant was selling large amounts of drugs, as well as four firearms and ammunition, over the course of a dozen or so recorded controlled purchases.  The Defendant has multiple warrants and violations notices on his record, where he has failed to abide with the conditions of the court as described.  The Defendant may attempt to downplay and ignore his criminal history, but it evidences a complete disregard for the legal system, and calls into question his willingness to abide by conditions of release.

Additionally, the Government would contend that the defendant is also a self-admitted long-time member of outlaw motorcycle organizations, as well as a drug and gun trafficker, outlined by the evidence in this case – along with further interactions with law enforcement, his tattoos, and his criminal history.  These factors all weigh in favor of detention.

## CONCLUSION

Based on the foregoing, the United States of America requests that the Court deny the Defendant's Request for Release from Detention and order that the James Snow be detained pending trial.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By:     */s/ John T. Dawley, Jr.*
        John T. Dawley, Jr.
        Assistant U.S. Attorney

Date: November 4, 2024

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ John T. Dawley, Jr.*
John T. Dawley, Jr.
Assistant U.S. Attorney

Date: November 4, 2024