**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

UNITED STATES OF AMERICA

      v.

JAMES SNOW

          Defendant.

Criminal 24-cr-10121-ADB

**DEFENDANT JAMES SNOW'S SENTENCING MEMORANDUM**

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 2

II.     BACKGROUND .................................................................................................. 3

        A. Mr. Snow's Family History ......................................................................... 3

        B. Mr. Snow's Limited Interactions with the Criminal Justice System............................. 5

        C. The Offense Conduct................................................................................... 5

III.    SENTENCING GUIDELINES AND PLEA AGREEMENT ........................................... 6

IV.     MR. SNOW'S SENTENCING REQUEST ...................................................................... 6

        A. A sentence of 87 months reflects the nature and circumstances of the offense............. 7

            i.  Mr. Snow's conduct was precipitated by a moment of crisis in his life. ................ 7

            ii. A sentence of 87 months appropriately accounts for the nature of Mr. Snow's
                conduct and participation in the conspiracy ........................................................... 9

        B. A sentence of 87 months imprisonment is appropriate considering Mr. Snow's history
        and characteristics. .................................................................................................... 10

            i. Mr. Snow's criminal history category overstates his criminal history. ................ 10

            ii. Until recently, Mr. Snow maintained employment and supported his family. ...... 10

        C. ███████████████████████████████ ................................. 11

V.      CONCLUSION......................................................................................................... 12

## I.    INTRODUCTION

Defendant James Snow ("Mr. Snow" or "Defendant") respectfully requests that this Court impose a sentence of 87 months imprisonment followed by 60 months of supervised release.  The requested sentence falls within the stipulated range of 87 to 108 months set forth in the plea agreement between Mr. Snow and the Government, dated October 1, 2025 (the "Plea Agreement").  Presentence Investigation Report ("PSR") ¶ 4.  Mr. Snow's conduct occurred during a particularly turbulent period in his life marked by profound grief, substance use, and ▒▒▒▒▒▒▒▒▒▒▒▒.  His conduct was a stark departure from the life Mr. Snow had led up to that point; prior to the instant offenses, Mr. Snow had never been sentenced to a single day in prison.  A sentence at the low end of the range set forth in the Plea Agreement is significant and reflects the seriousness of the offense while also accounting for the factors that contributed to Mr. Snow's conduct.

Pursuant to the binding Plea Agreement under Rule 11(c)(1)(C), Mr. Snow pled guilty on December 1, 2025 to portions of three counts of a Superseding Indictment charging him with conspiracy to distribute methamphetamine, distribution of methamphetamine, and selling firearms without a license, all arising out of controlled purchases made over approximately six months, between October 2023 and March 2024.  *Id.* ¶¶ 2-4, 29.  The drug offenses carry a statutory minimum sentence of five years imprisonment.  *Id.* ¶ 106.  Under the binding Plea Agreement, the parties have agreed to a sentence of 87 to 108 months imprisonment with 60 months of supervised release.  *Id.* ¶ 4.

As set forth further below, when Mr. Snow engaged in the conduct that led to his arrest, he was struggling immensely with ▒▒▒▒▒▒▒▒▒▒▒▒▒▒ and unprocessed grief stemming from the sudden deaths of his entire immediate family.  *Id.* ¶¶ 66-68, 70-71.  Unable to bear the loss of his family members, Mr. Snow self-medicated with drugs, which eventually led to him

using cocaine and methamphetamine daily to cope with his grief, ███████████████ ██████████. *Id.* ¶¶ 87-88, 91. Those issues ultimately contributed to the dissolution of his ten-year relationship with his former fiancé and the mother of Mr. Snow's child, leaving him homeless and without a support system. *Id.* ¶¶ 71, 74. It was only then, when the multiple crises in Mr. Snow's life converged, that he engaged in the criminal conduct that led to his arrest. █████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████ Since his arrest, Mr. Snow has demonstrated that he is capable and deeply committed to rehabilitation and turning his life around. He recognizes that he would benefit greatly from participating in the Residential Drug Abuse Program ("RDAP") during his incarceration and the Probation Office's CARE Program while on supervised release. *Id.* ¶ 93. Mr. Snow is equally committed to seeking ███████████████ both during his sentence and upon his release.

In sum, a sentence of 87 months imprisonment with 60 months of supervised release—a very significant sentence—is just and sufficient but not greater than necessary to punish and deter, while at the same time reflecting the unique and difficult circumstances that precipitated Mr. Snow's criminal conduct and his personal characteristics, including his capacity for rehabilitation.

## II.    BACKGROUND

### A.  Mr. Snow's Family History

Mr. Snow has endured profound personal loss and instability throughout his life. Despite experiencing immense tragedy, for most of his adult life, Mr. Snow maintained steady employment, supported his family—including his young son—and sought to improve himself and his community. *See* Ex. B at 1 ("He was the person people called when they needed help . . . [h]e

3

never hesitated to show up for others."). Mr. Snow was born in Malden, Massachusetts. PSR ¶ 64. At just twelve years old, he experienced the first great tragedy of his life—the death of his only sibling from a heroin overdose at age nineteen. *Id.* ¶¶ 65, 68. Mr. Snow's brother had long struggled with substance use and had left the family home to live at a sober house shortly before his death. *Id.* ¶¶ 64-65. Following this loss, Mr. Snow's family, who had recently relocated to Florida, moved back to the New England region, settling in various New Hampshire communities including Pelham, Nashua, and Salem. *Id.* ¶ 64. When Mr. Snow's father became ill, the family struggled financially and lost their home in Pelham, forcing them to move into the basement apartment of Mr. Snow's aunt. *Id.* While Mr. Snow attended school until the tenth grade, he struggled to fit in and ultimately did not obtain a high school diploma. *Id.* ¶ 94. The loss of Mr. Snow's brother was eventually compounded by the loss of both his father and mother. *Id.* ¶¶ 66-67. In 2014, his father passed away from a heart attack. *Id.* ¶ 66. Following the death of his father, Mr. Snow provided emotional and financial support to his mother until she sadly passed away from breast cancer just two years later. *Id.* ¶ 67. These tragedies left Mr. Snow without the support of his immediate family shortly after the birth of his son, a trauma that has deeply affected his ███████████ and life trajectory.

Mr. Snow's ex-fiancé has been the most consistent support structure in his life since the passing of his brother and parents. *See id.* ¶ 71; Ex. B at 1-2. They lived together and were in a relationship for nearly ten years. PSR ¶ 71. During that period, Mr. Snow maintained steady employment and was a devoted provider for his family. *Id.* ¶¶ 71, 101-102; Ex. B at 1-2. Mr. Snow's son remains the most important person in his life—he has a tattoo of his son's footprint and name on his arm and is committed to rebuilding his life to be a positive role model for his son. PSR ¶¶ 75, 80. Despite the challenges Mr. Snow has faced, his ex-fiancé continues to be his

4

"biggest supporter," and he has remained in close contact with her and his son while detained at Wyatt. *Id.* ¶ 72.

### B. Mr. Snow's Limited Interactions with the Criminal Justice System

Mr. Snow's substance use and ▮▮▮▮▮▮▮▮▮▮▮, exacerbated by the death of his entire immediate family, contributed to the circumstances that ultimately led to his criminal conduct. Beyond the instant offense, his criminal history is minimal and non-violent. *Id.* ¶¶ 54-62. He has only been convicted of two minor offenses. The other arrests reflected in his record were either dismissed or nolle prosequi. *Id.* He has never been sentenced to a term of imprisonment and, prior to this case, had not been charged with a violent or federal offense. *Id.* There is likewise no evidence that he has ever used or threatened to use a firearm in a violent manner. Viewed in context, Mr. Snow's criminal history does not reflect the record of a habitual offender but rather the cumulative result of severe, ▮▮▮▮▮▮▮▮▮▮▮ that led to substance use and a period of profound instability in his life.

### C. The Offense Conduct

In the months and years leading up to Mr. Snow's criminal conduct, the unresolved grief from the sudden deaths of his brother and parents plunged him into ▮▮▮▮, mounting instability, substance use, and other self-destructive behaviors. PSR ¶¶ 70-71. These struggles, in turn, contributed to the breakdown of his relationship with his ex-fiancé, the loss of his employment, and a period of homelessness in 2022. *Id.* ¶¶ 71, 74. The charges that Mr. Snow pled guilty to all stemmed from conduct that occurred after that period of crisis in his life, between October 2023 and March 2024. *Id.* ¶ 29. At the time of his arrest, ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ and has been detained at the Donald W. Wyatt Detention Facility ("Wyatt") for nearly seventeen months. *See id.* ¶¶ 1, 33. Mr. Snow recognizes that he now has an opportunity to

5

rebuild his life and return to his family and friends as a productive member of society. *See* Ex. A, Personal Essay from Mr. Snow.

### III.   SENTENCING GUIDELINES AND PLEA AGREEMENT

As outlined in the PSR and Plea Agreement, Mr. Snow's Sentencing Guidelines calculations yield a total offense level of 33. PSR ¶ 52. His base offense level is 34 because at least 500 grams but fewer than 1.5 kilograms of methamphetamine (actual) were attributed to him under U.S.S.G. § 2D1.1(a)(5) and (c)(3). *Id.* ¶ 43. His offense level is increased by 2 because of one transaction where he sold both narcotics and a firearm to an undercover officer. *Id.* ¶ 44. Mr. Snow's offense level is decreased by 3 points because he accepted responsibility and timely pleaded guilty to the offenses charged. *Id.* ¶¶ 50-51. As explained in the PSR, Mr. Snow has two prior convictions—improper storage of a firearm and receiving stolen property under $1,200—and falls within Criminal History Category II. *Id.* ¶ 58. At Criminal History Category II, the corresponding guidelines sentencing range is 151 to 188 months. *Id.* ¶ 107. However, pursuant to the binding Plea Agreement under Rule 11(c)(1)(C), the parties have agreed to a sentence of 87 to 108 months imprisonment. *Id.* ¶ 108.

### IV.   MR. SNOW'S SENTENCING REQUEST

Mr. Snow's criminal conduct occurred during a period of significant instability and crisis in his life. He faced devastating personal losses and was battling substance use issues and ███████████████. Mr. Snow's prior interactions with the legal system are limited. He has never been sentenced to a term of imprisonment, charged with a violent crime, nor charged with a federal crime. As detailed further below, Mr. Snow has demonstrated both a strong capacity for rehabilitation and a deep commitment to turning his life around.

**A.  A sentence of 87 months reflects the nature and circumstances of the offense.**

In evaluating the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1), the Court should consider not only the conduct itself but also the context in which it occurred. Here, both factors weigh in favor of a sentence at the low end of the agreed-upon range.  Mr. Snow's criminal conduct arose during a period of profound personal crisis marked by homelessness, ▮▮▮▮▮▮▮▮▮▮, and substance use.  Since his arrest, Mr. Snow has demonstrated a genuine commitment to rehabilitation and has taken meaningful steps to address the underlying issues that contributed to his offense.  Moreover, Mr. Snow's participation in the conspiracy was limited, occupying the lowest rung of the conspiracy's hierarchy.

> *i.  Mr. Snow's conduct was precipitated by a moment of crisis in his life.*

Mr. Snow's life was falling apart in the year before he first sold drugs.  Over the course of just three months at the end of 2022, Mr. Snow lost his job at Pioneer Freight Systems ("Pioneer"), separated from his ex-fiancé, became homeless, and ▮▮▮▮▮▮▮.  PSR ¶¶ 71, 79, 98.  In other words, every support system Mr. Snow had managed to establish after the death of his immediate family was collapsing, and his life was spiraling out of control.  Between September 2022 and July 2024, Mr. Snow lived a transient existence, finding temporary shelter in various tents, campgrounds, and hotels.  *Id.* ¶ 74.  Mr. Snow's substance use issues became even more pronounced during this time.  In 2022, he began smoking or injecting methamphetamine daily up until his arrest.  *Id.* ¶¶ 87-88.  While homeless in 2023, he overdosed after ingesting cocaine laced with fentanyl and had to be revived with Narcan multiple times.  *Id.* ¶ 87.  The two people he cared about the most, his son and ex-fiancé, were no longer present in his life.  He did seek ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ during this time, but he was forced to discontinue counseling because he could no longer afford the co-payments.  *Id.* ¶ 79.  While Mr. Snow takes

7

full responsibility for his actions, it was these extraordinary circumstances that ultimately led him to sell narcotics to survive.

Since his arrest, Mr. Snow has demonstrated that he is capable of rehabilitation and is committed to turning his life around.  Until an unfortunate relapse while incarcerated in November 2025, he achieved approximately thirteen months of sobriety and has shown a genuine interest in continuing ███████████████ and participating in a drug abuse prevention program to address the root causes of his criminal conduct.  *Id.* ¶ 91; Ex. A ("I want to address the issues that led me here- my substance use, my ████████████, and the unresolved grief I have carried for years.").  The Probation Office has determined that Mr. Snow is an appropriate candidate for RDAP based on his history of substance use prior to arrest and recommends that he participate in the Probation Office's CARE Program while on supervised release.  PSR ¶ 93.  Mr. Snow is eager to participate in both programs and any other programming available to improve his life.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████.

*Id.* ¶¶ 79-79a.  Through counseling, he has learned to cope with his ████████████ and past trauma in more productive ways.  *Id.* ¶ 80.  He strives to maintain a positive mindset and focuses on being a role model for his son once released.  *Id.*  He has been in regular contact with his son and ex-fiancé who is ready and willing to support Mr. Snow upon his release.  *Id.* ¶ 72; Ex. B at 2. He plans to secure housing and employment, and he is interested in participating in the Probation Office's Nurturing Fathers Program while on supervised release.  PSR ¶ 83.  In sum, Mr. Snow's criminal conduct was an aberration in his life, and he has shown his capacity to contribute meaningfully to society.  *See* Ex. B at 1-2.

8

>        ii.    *A sentence of 87 months appropriately accounts for the nature of Mr. Snow's*
>               *conduct and participation in the conspiracy.*

Mr. Snow is not a violent person. Significantly, his conduct—though serious—involved no violence, threats, or physical harm to any individual. *See* PSR ¶ 36. At no point did Mr. Snow brandish a weapon or employ a firearm in the commission of another offense. The two-point enhancement applied to his total offense level under U.S.S.G. §2D1.1(b)(1) arose from a single incident on February 14, 2024, when Mr. Snow sold a firearm alongside narcotics. *Id.* ¶ 44. While Mr. Snow concedes the enhancement was properly calculated, the circumstances here stand in stark contrast to cases where the enhancement is applied because defendants brandished or possessed firearms to threaten or coerce individuals in connection with drug offenses. For that reason, Mr. Snow's conduct is distinguishable from the more serious circumstances that warrant this enhancement, and a sentence at the low end of the Plea Agreement range would more accurately reflect the nature and circumstances of the offense. Moreover, while Mr. Snow accepts responsibility for selling firearms without a license, it was the undercover officer who first raised the prospect of purchasing firearms and initially inquired about whether Mr. Snow could obtain them.

Mr. Snow also played a limited, subordinate role in the conspiracy, acting as a seller working for Daniel Loughman, not as a leader, organizer, or manager. *See id.* ¶ 11. There is no evidence showing that Mr. Snow actively recruited other participants or managed any aspect of the distribution network. The Probation Office's guideline calculation reflects this limited role: no enhancement was applied under U.S.S.G. §3B1.1 for his role in the offense, confirming that Mr. Snow was not a leader but rather occupied the lowest rung of the conspiracy's hierarchy. *Id.* ¶ 46. Mr. Snow's limited involvement in the conspiracy further supports a sentence of 87 months imprisonment.

## B. A sentence of 87 months imprisonment is appropriate considering Mr. Snow's history and characteristics.

*i.    Mr. Snow's criminal history category overstates his criminal history.*

While Mr. Snow does have prior arrests, he has never been sentenced to a term of imprisonment, charged with a violent crime, or charged with a federal crime. PSR ¶¶ 54-56. His only two prior convictions resulted in probationary sentences: one for improper storage of a firearm in 2018; and one for receiving stolen property under $1,200 in 2023. *Id.* ¶¶ 54-56. Notably, the 2018 conviction arose from a ▮▮▮▮▮▮▮▮ during which Mr. Snow was ▮▮▮▮▮▮▮ ▮▮▮▮▮▮ after making a social media post that implied he was going to harm himself or others. *Id.* ¶ 55. When officers from the Everett Police Department confronted him about the post, he immediately admitted it was him and surrendered his license to carry without incident. *Id.* If anything, this incident was a cry for help, not indicative of a broader pattern of criminal behavior. In short, nothing in Mr. Snow's criminal history suggests that a longer term of imprisonment is necessary to deter future criminal conduct.

*ii.    Until recently, Mr. Snow maintained employment and supported his family.*

Despite the challenges Mr. Snow faced growing up and as a young adult, he has maintained steady employment for most of his adult life. *See* Ex. B at 1-2. He began working at J. Polep Distribution Services in 2010 as a distributor and security assistant. PSR ¶ 102. He held those positions until 2014 when he secured a job at Pioneer, a trucking company based at Logan International Airport. *Id.* Mr. Snow spent eight years at Pioneer, working his way up to an operations manager, earning approximately $95,000 annually. *Id.* ¶ 101. He only left Pioneer when his ▮▮▮▮▮▮ deteriorated in 2022 but hopes to return to the trucking industry. *Id.* In 2017, Mr. Snow was engaged to his ex-fiancé, with whom he shares his nine-year-old son. *Id.* ¶ 71. Until 2022, Mr. Snow cohabitated with his ex-fiancé and shared responsibility for his son. *Id.*

10

His ex-fiancé describes Mr. Snow as a "steady provider for our family" and "the person people called when they needed help" highlighting his history of helping friends and family in need. Ex. B at 1. Before 2022, Mr. Snow's support for friends and family ranged from providing financial assistance, meals, housing, and his mechanical and general labor skills. *See* Ex. B at 1. Mr. Snow's loved ones continue to believe in his capacity for rehabilitation and his commitment to his family and community. *See* Ex. B at 2 ("I have never stopped believing that Jimmy is more than the worst decisions of his life"); Ex. C ("I believe James if given the help he needs will be a productive member of society again.").

**C.** ██████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████

## V.    CONCLUSION

For these reasons, Mr. Snow respectfully requests that the Court sentence him to 87 months of imprisonment along with 60 months of supervised release, which is at the low end of the range Mr. Snow agreed to in the Plea Agreement.

Dated: February 26, 2026

Respectfully submitted,

By:    */s/ Sarah E. Walters*

Sarah E. Walters
James P. Dowden
Kevin J. Travaline
ROPES & GRAY LLP
800 Boylston Street
Boston, MA 02199-3600
Telephone: (617) 951-7000
Fax: (617) 951-7050
Sarah.Walters@ropesgray.com
James.Dowden@ropesgray.com
Kevin.Travaline@ropesgray.com

*Counsel for Defendant James Snow*

12

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on February 26, 2026, I authorized a true and correct copy of the foregoing document to be sent via e-mail to John T. Dawley Jr, counsel for the Government.

*/s/ Sarah E. Walters*
Sarah E. Walters

13